IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JoANN HANSON and
     THOMAS M. HANSON, her husband,

     Plaintiffs,

Civil Action No.: 1: 08-cv- 04900-UA

vs.

MERCK & CO., INC.,

     Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JoANN HANSON and THOMAS M. HANSON, her husband, through their undersigned attorneys Levin, Papantonio et al., sue Defendant Merck & Company, Inc., and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity exists between Plaintiffs and Defendant. Plaintiffs are residents of the State of Michigan, and Defendant is incorporated and has as its primary business in the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2. Venue is proper within this district pursuant to Case Management Order No. 3, filed November 1, 2006, signed by John F. Keenan, allowing Fosamax-related cases to be

filed directly in the Southern District of New York.

## II. PARTIES

3.  Plaintiff JoANN HANSON was born January 5, 1941. Plaintiff used FOSAMAX from approximately April 2001 until approximately May 2006. Plaintiff JoANN HANSON was married to THOMAS M. HANSON and they were residents of The State of Michigan at all times material to this action.

4.  Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey.

5.  Defendant was at all relevant times authorized to conduct business in the State of Michigan.

6.  Defendant has regularly transacted business in the State of Michigan and continues to do so.

7.  At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

8.  Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Michigan for the treatment of osteoporosis.

-2-

9.    Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Michigan.

10.   Defendant expected, or should have expected, that its business activities could or would have consequences within the State of Michigan.

### III. SUMMARY OF THE CASE

11.   Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed , advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label uses.

12.   As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff JoANN HANSON, have suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw.

13.   Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff JoANN HANSON, other consumers, and the medical community.

14.   Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

15.   As a result of Defendant's actions and inaction, Plaintiff JoANN HANSON was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiffs' various injuries and damages.    Plaintiffs accordingly seek compensatory damages.

## IV. FACTUAL BACKGROUND

16. At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

17. In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

18. FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

19. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Boniva); risedronate (Actonel); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

-4-

20. Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw with the use of nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew or should have known that FOSAMAX, as a nitrogenous bisphosphonate, shared an adverse event profile similar to that of the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

21. Merck knew and or should have known that bisphosphonates, including FOSAMAX, inhibit endothelial cell function. Similarly, Merck knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

22. Merck also knew or should have known these factors combine to create a compromised vascular supply to the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

23. Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24. Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

-5-

25.   Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study of the risk of osteonecrosis of the jaw relative to FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

26.   Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

27.   Since FOSAMAX was released, the FDA has received a number of reports of osteonecrosis of the jaw among users of FOSAMAX.

28.   On August 25, 2004, the FDA posted its Office of Drug Safety ("ODS") Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

29.   As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that osteonecrosis of the jaw was a class effect that specifically extended to the oral bisphosphonate FOSAMAX.

-6-

30. As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw. Merck has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

31. Rather than warn patients, and despite Defendant's knowledge of an increased risk of osteonecrosis of the jaw in patients using FOSAMAX, Defendant continues to defend FOSAMAX and minimize unfavorable findings.

32. FOSAMAX is one of Defendant's top selling drugs, averaging more than $3 billion a year in sales.

33. Consumers, including Plaintiff JoANN HANSON, who have used FOSAMAX for treatment of osteoporosis, have several alternative safer products available to treat the conditions.

34. Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff JoANN HANSON, or the medical community, of such risks.

35. As a direct result, Plaintiff JoANN HANSON was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX. Plaintiff JoANN HANSON requires and will in the future require ongoing medical care and treatment for the injuries she suffered as a result of taking FOSAMAX.

-7-

36.  Plaintiff JoANN HANSON has suffered mental anguish as a result of knowing the life-long complications she will suffer as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

37.  Plaintiff JoANN HANSON was prescribed and began taking FOSAMAX in April 2001.

38.  Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

39.  As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to the jaw.

40.  Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and has sustained permanent injuries and emotional distress.

41.  Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

42.  Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

43.  Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX.  The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

44.     As a result of Defendant's actions, Plaintiff and her prescribing and treating physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## V. COUNTS

### COUNT I:  NEGLIGENCE

45.     Plaintiffs re-allege the above paragraphs as if fully set forth herein.

46.     Defendant owed Plaintiff, JoANN HANSON, other consumers, and physicians a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

47.     Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a.  failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

b.  failing to properly and throughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c.  failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

d.  designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which

could foreseeably occur as a result of using the drug;

      e.  failing to exercise due care when advertising and promoting FOSAMAX; and

      f.  negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

48.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

49.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

50.    Plaintiff JoANN HANSON's spouse, THOMAS M. HANSON, sustained a loss of

consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT II:  STRICT LIABILITY

51.   Plaintiffs re-allege the above paragraphs as if fully set forth herein.

52.   Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff JoANN HANSON.

53.   Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

54.   Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

55.   FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

56.   FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

57.   FOSAMAX was defective in design or formulation in that it posed a greater

-11-

likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

58.    FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, and or physicians, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

59.    Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

60.    Plaintiff and or her physician(s) could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

61.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent injury of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered.  Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and

-12-

damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

62. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

63. Plaintiff JoANN HANSON's spouse, THOMAS M. HANSON, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

COUNT III: BREACH OF EXPRESS WARRANTY

64. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

65. Defendant expressly represented to Plaintiff JoANN HANSON and other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

66. FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent

injuries.

67. At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

68. Plaintiff JoANN HANSON, other consumers, and the medical community relied upon Defendant's express warranties.

69. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

70. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

71.  Plaintiff JoANN HANSON's spouse, THOMAS M. HANSON, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

COUNT IV: BREACH OF IMPLIED WARRANTY

72.  Plaintiffs re-allege the above paragraphs as if fully set forth herein.

73.  Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

74.  At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

75.  Defendant was aware that consumers, including Plaintiff JoANN HANSON, would use FOSAMAX for treatment of osteoporosis and for other purposes.

76.  Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

77.  Defendant breached its implied warranty to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

78.  Consumers, including Plaintiff, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

-15-

79.    FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

80.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent injury of the jaw.   In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered.  Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

81.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

82.    Plaintiff JoANN HANSON's spouse, THOMAS M. HANSON, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society,

companionship, services, support, and care. His losses are permanent and continuing in nature.

COUNT V: FRAUDULENT MISREPRESENTATION

83.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

84.    Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis; and

b.    Defendant represented that FOSAMAX was safer than other alternative medications.

85.    Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

86.    The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

87.    Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

-17-

88.  Plaintiff JoANN HANSON, Plaintiff's doctors, and others relied upon the representations.

89.  Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

90.  As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent injury of the jaw.   In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered.  Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

91.  Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

92.    Plaintiff JoANN HANSON's spouse, THOMAS M. HANSON, sustained a loss of

consortium as a result of the injuries and damages sustained by his wife incident to

the use of FOSAMAX. His damages include, but are not limited to, a loss of society,

companionship, services, support, and care. His losses are permanent and continuing

in nature.

COUNT VI: FRAUDULENT CONCEALMENT

93.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

94.    Defendant fraudulently concealed information with respect to FOSAMAX in the

following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail

persons, seminar presentations, publications, notice letters, and regulatory submissions that

FOSAMAX was safe and fraudulently withheld and concealed information about the

substantial risks of using FOSAMAX; and

b.    Defendant represented that FOSAMAX was safer than other alternative

medications and fraudulently concealed information which demonstrated that FOSAMAX

was not safer than alternatives available on the market.

95.    Defendant had sole access to material facts concerning the dangers and unreasonable

risks of FOSAMAX.

96.    The concealment of information by Defendant about the risks of FOSAMAX was

intentional, and the representations made by Defendant were known by Defendant

-19-

to be false.

97.    The concealment of information and the misrepresentations about FOSAMAX were
       made by Defendant with the intent that doctors and patients, including Plaintiff, rely
       upon them.

98.    Plaintiff JoANN HANSON, Plaintiff's doctors, and others relied upon the
       representations and were unaware of the substantial dental and oral risks of
       FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

99.    As a direct and proximate consequence of Defendant's actions, omissions, and
       misrepresentations, Plaintiff JoANN HANSON sustained significant and permanent
       injury of the jaw.  In addition, Plaintiff required and will continue to require
       healthcare and services as a result of the injury suffered.  Plaintiff has incurred and
       will continue to incur medical and related expenses as a result of her injury.  Plaintiff
       has also suffered and will continue to suffer diminished capacity for the enjoyment
       of life, a diminished quality of life, increased risk of premature death, aggravation of
       preexisting conditions and activation of latent conditions, and other losses and
       damages.  Plaintiff's direct medical losses and costs include care for hospitalization,
       physician care, monitoring, treatment, medications, and supplies.  Plaintiff has
       suffered and will continue to suffer mental and physical pain as a result of her
       injuries.

100.   Defendant's conduct as described above was committed with knowing, conscious,
       wanton, willful, and deliberate disregard for the value of human life and the rights

and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

101.   Plaintiff JoANN HANSON 's THOMAS M. HANSON, THOMAS M. HANSON, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

<u>GLOBAL PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs demand judgment against Defendant, as follows:

    a. compensatory damages on each cause of action;

    b. punitive damages on each cause of action;

    c. reasonable attorneys' fees where recoverable;

    d. costs of this action; and

    e. such other additional and further relief as the Court may deem necessary, appropriate, and just.

-21-

## VI. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all counts and issues so triable.

TIMOTHY M. O'BRIEN
MEGHAN M. TANS
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ESCHSNER & PROCTOR , P.A.
316 South Baylen Street, Suite 600 (32502)
P. O. Box 12308
Pensacola, Florida 32591
Telephone(850) 435-7181
FAX (850) 436-6181

-22-

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS JoAnn HANSON and THOMAS M. HANSON, her husband | DEFENDANTS MERCK & CO., INC. |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) LEVIN, PAPANTONIO, ET. AL., 316 S. BAYLEN STREET, SUITE 600, PENSACOLA, FL 32591 | ATTORNEYS (IF KNOWN) Meghan M. Tans, Timothy M. O'Brien |
|---|---|

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

28 U.S.C. 1332
PRODUCT LIABILITY - DEFECTIVE PHARMACEUTICAL (Fosamax)

Has this or a similar case been previously filed in SDNY at any time? No☐ Yes? ☒ Judge Previously Assigned KEENAN

If yes, was this case Vol☐ Invol. ☐ Dismissed. No ☒ Yes ☐ If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)* NATURE OF SUIT

ACTIONS UNDER STATUTES

|  | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| **CONTRACT** | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | [ ] 422 APPEAL | [ ] 400 STATE |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - | [ ] 620 FOOD & DRUG | 28 USC 158 | REAPPORTIONMENT |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | MED MALPRACTICE | [ ] 625 DRUG RELATED | [ ] 423 WITHDRAWAL | [ ] 410 ANTITRUST |
| [ ] 130 MILLER ACT | LIABILITY | [X] 365 PERSONAL INJURY | SEIZURE OF | 28 USC 157 | [ ] 430 BANKS & BANKING |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | PRODUCT LIABILITY | PROPERTY | | [ ] 450 COMMERCE/ICC |
| INSTRUMENT | SLANDER | [ ] 368 ASBESTOS PERSONAL | 21 USC 881 | **PROPERTY RIGHTS** | RATES/ETC |
| [ ] 150 RECOVERY OF | [ ] 330 FEDERAL | INJURY PRODUCT | [ ] 630 LIQUOR LAWS | | [ ] 460 DEPORTATION |
| OVERPAYMENT & | EMPLOYERS' | LIABILITY | [ ] 640 RR & TRUCK | [ ] 820 COPYRIGHTS | [ ] 470 RACKETEER INFLU- |
| ENFORCEMENT OF | LIABILITY | | [ ] 650 AIRLINE REGS | [ ] 830 PATENT | ENCED & CORRUPT |
| JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 660 OCCUPATIONAL | [ ] 840 TRADEMARK | ORGANIZATION ACT |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | | SAFETY/HEALTH | | (RICO) |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | [ ] 690 OTHER | **SOCIAL SECURITY** | [ ] 480 CONSUMER CREDIT |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | | [ ] 490 CABLE/SATELLITE TV |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | [ ] 380 OTHER PERSONAL | **LABOR** | [ ] 861 MIA (1395FF) | [ ] 810 SELECTIVE SERVICE |
| (EXCL VETERANS) | PRODUCT LIABILITY | PROPERTY DAMAGE | | [ ] 862 BLACK LUNG (923) | [ ] 850 SECURITIES/ |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | [ ] 385 PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 863 DIWC (405(g)) | COMMODITIES/ |
| OVERPAYMENT OF | INJURY | PRODUCT LIABILITY | STANDARDS ACT | [ ] 863 DIWW (405(g)) | EXCHANGE |
| VETERAN'S BENEFITS | | | [ ] 720 LABOR/MGMT | [ ] 864 SSID TITLE XVI | [ ] 875 CUSTOMER |
| [ ] 160 STOCKHOLDERS SUITS | | | RELATIONS | [ ] 865 RSI (405(g)) | CHALLENGE |
| [ ] 190 OTHER CONTRACT | | | [ ] 730 LABOR/MGMT | | 12 USC 3410 |
| [ ] 195 CONTRACT PRODUCT | | | REPORTING & | | [ ] 891 AGRICULTURE ACTS |
| LIABILITY | | | DISCLOSURE ACT | | [ ] 892 ECONOMIC |
| [ ] 196 FRANCHISE | | | [ ] 740 RAILWAY LABOR ACT | **FEDERAL TAX SUITS** | STABILIZATION ACT |
| | | | [ ] 790 OTHER LABOR | | [ ] 893 ENVIRONMENTAL |
| | | | LITIGATION | [ ] 870 TAXES | MATTERS |
| | **ACTIONS UNDER STATUTES** | | [ ] 791 EMPL RET INC | [ ] 871 IRS-THIRD PARTY | [ ] 894 ENERGY |
| | | | SECURITY ACT | 20 USC 7609 | ALLOCATION ACT |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | [ ] 895 FREEDOM OF |
| | | | | | INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO | | | [ ] 900 APPEAL OF FEE |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | VACATE SENTENCE | | | DETERMINATION |
| [ ] 230 RENT LEASE & | [ ] 443 HOUSING | 28 USC 2255 | | | UNDER EQUAL ACCESS |
| EJECTMENT | ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | TO JUSTICE |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | [ ] 950 CONSTITUTIONALITY |
| [ ] 245 TORT PRODUCT | [ ] 445 AMERICANS WITH | [ ] 540 MANDAMUS & OTHER | | | OF STATE STATUTES |
| LIABILITY | DISABILITIES - | [ ] 550 CIVIL RIGHTS | | | [ ] 890 OTHER STATUTORY |
| [ ] 290 ALL OTHER | EMPLOYMENT | [ ] 555 PRISON CONDITION | | | ACTIONS |
| REAL PROPERTY | [ ] 446 AMERICANS WITH | | | | |
| | DISABILITIES -OTHER | | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | | | | |

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____ OTHER _____    JUDGE KEENAN _____ DOCKET NUMBER 06-MDL 1789

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO    NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN x IN ONE BOX ONLY)*            **ORIGIN**

☒ 1 Original Proceeding    ☐ 2a. Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from (Specify District)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

           ☐ 2b. Removed from State Court AND at least one party is a pro se litigant

*(PLACE AN x IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**      **IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)**

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☒ 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [x] 5 |
| CITIZEN OF ANOTHER STATE | [x] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

JoAnn Hanson and
Thomas M. Hanson, her husband
4500 Carmenwood Dr.
Flint, MI 48507

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

MERCK & CO., INC.
ONE MERCK DRIVE
P.O. BOX 100, WS3AB-05
WHITEHOUSE STATION, NEW JERSEY, 08889-0100

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one: THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☒ FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE 5/27/08    SIGNATURE OF ATTORNEY OF RECORD      ADMITTED TO PRACTICE IN THIS DISTRICT
RECEIPT #                             [ ] NO
                                      [x] YES (DATE ADMITTED Mo. 5   Yr. 2007 )
                                      Attorney Bar Code # XXXXX

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ SOUTHERN _____    DISTRICT OF _____ NEW YORK _____

JoANN HANSON and THOMAS M. HANSON
her husband

### SUMMONS IN A CIVIL CASE

## V.

CASE NUMBER:

MERCK & CO., INC.

TO: (Name and address of defendant)

MERCK & CO., INC.
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MEGHAN M. TANS
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, P.A.
316 S. BAYLEN STREET, SUITE 600
PENSACOLA, FL 32591

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons in a Civil Action -SDNY  WEB 4/99

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and Complaint was made by me[1] | DATE | |
| NAME OF SERVER (PRINT) | TITLE | |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant.  Place where served: _____
_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐   Returned unexecuted: _____
_____
_____
_____

☐   Other (specify): _____
_____
_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
            Date                                 Signature of Server

                                               _____
                                               Address of Server

(1)     As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
IN RE: Fosamax Products Liability :
Litigation                          :
                                    :
                                    :
------------------------------------x
*This Document Relates to:* MDL-1789 :
                                    :
*Fredericka Allen v. Merck Case No.:06-cv-9452* :
*Bridget Arcemont v. Merck Case No.: 07-cv-2389* :
*Virginia Bergeson v. Merck Case No.: 06-cv-9454* :
*Shirley Boles v. Merck Case No.:06-cv-9455* :
*Sharon Bradford v. Merck Case No.: 07-cv-477* :
*Winnie Bruswell v. Merck Case No.: 1:07-cv-1413* :
*Roberta Brodin v. Merck Case No : 07-cv-3466* :
*Brenda Carpenter v. Merck Case No.: 07-cv-3464* :
*Sonja Daroff v. Merck Case No.: 07-cv-3462* :
*Debra Flores v. Merck Case No.: 07-cv-02442* :
*Sandra Hall v. Merck Case No.: 07-cv-3467* :
*Purcia Hardy v. Merck Case No.: 07-cv-797* :
*Carolyn Hester v. Merck Case No.:06-cv-9450* :
*Pamela Hines v. Merck Case No.: 07-cv-480* :
*Rochelle Kenig v. Merck Case No.: 07-cv-00478* :
*Anna Mervin v. Merck Case No.: 07-cv-3463* :
*Janice Moe v. Merck Case No.: 07-cv-00479* :
*James Napier v. Merck Case No.:06-cv-9451* :
*Wilma Parslow v. Merck Case No.: 07-cv-3465* :
*Tamae Porter v. Merck Case No.: 07-cv-790* :
*Margaret Sizelove v. Merck Case No.: 07-cv-3459* :
*Maxine Skhute v. Merck Case No.: 07-cv-3461* :
*Edna Sykes v. Merck Case No.:07-cv-1412* :
*Kathleen Toelke v. Merck Case No.:06-cv-7629* :
*Reyna Vandercar v. Merck Case No.:06-cv-11329* :
*Nellie Wade v. Merck Case No.:06-cv-9453* :
*Carol Young v. Merck Case No.: 06-cv-0531* :
*Bonnie Laughlin v. Merck Case No.:07-cv-3827* :
------------------------------------x

1:06-md-1789 (JFK)

### ORDER FOR ADMISSION
### PRO HAC VICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  5-30-2007

Considering the Certificate of Good Standing submitted by counsel, **IT IS**

**HEREBY ORDERED that:**

Meghan M. Tans
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 400
P.O. Box 12308 (32591)
Pensacola, FL 32502
Phone: (850) 435-7181
Facsimile: (850) 436-6181
Email: mtans@levinlaw.com

is admitted to practice pro hac vice as counsel for the plaintiffs in the above-referenced

MDL proceeding.

Signed this 30 day of _May_, 2007, at _New York_, New York.

_John F. Keenan_
UNITED STATES DISTRICT COURT JUDGE

AO 136 (Rev. 9/98) Certificate of Good Standing

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## CERTIFICATE OF GOOD STANDING

*I, Sheryl L. Loesch , Clerk of this Court,*

*certify that Meghan M. Tans, Bar # 00888745,*

*was duly admitted to practice in this Court on*

*April 22, 2005, and is in good standing*

*as a member of the Bar of this Court.*

*Dated at Jacksonville, Florida, on May 17, 2007.*

SHERYL L. LOESCH
CLERK

DEPUTY CLERK